# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 18, 2017 Session

## GREGORY WHITE, ET AL. v. JACK MILLER, ET AL.

**Appeal from the Chancery Court for Wilson County**
**No. 2013-CV-257    Charles K. Smith, Chancellor**

_____

**No. M2016-00888-COA-R3-CV**

_____

Sellers of home and their listing agent brought suit against a real estate brokerage firm and an agent employed by the firm to recover for alleged violations of the Tennessee Consumer Protection Act and Real Estate Broker License Act, undisclosed dual agency, and breach of fiduciary duty, arising from the sale of plaintiffs' home. The brokerage firm agent procured a contract whereby the sellers agreed to purchase the buyers' home, with the purchase price for the buyers' home to be treated as a credit on the purchase price of the sellers' home. Upon learning that the agent was also representing the buyers, the sellers brought suit, seeking forfeiture of the agent's and brokerage firm's commission; the sellers' listing agent joined in the suit to recover the commission the brokerage firm agreed to pay her as a referral fee. The trial court dismissed all claims filed by the seller husband for lack of standing, granted summary judgment to seller wife on her claim of undisclosed dual agency, and ordered that the brokerage firm and agent forfeit the commission from the sale. The court awarded the listing agent the commission she sought and granted summary judgment to brokerage firm and agent on the seller wife's claim under the Tennessee Consumer Protection Act and on the seller wife's claim that she was entitled to the commission generated by the sale of the buyers' home. Upon a thorough review of the record, we affirm the judgment in part and reverse in part, and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Teresa Reall Ricks and Laura Adams Hight, Nashville, Tennessee, for the appellants, Jack Miller and Bob Parks Realty, LLC.

Thomas B. Luck, Nashville, Tennessee, for the appellees, Gregory White, Robin White, and Carole Palmer.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

Robin and Gregory White, owners of property located at 2052 Breckenridge Drive, Mt. Juliet, ("the Breckenridge Property") entered into an agreement with Carole Palmer, a licensed real estate agent, to list the property for sale. Ms. Palmer then entered into an agreement with Bob Parks Realty Co. ("Parks") wherein she referred Robin White to Parks, and for which she was to receive 25 percent of the commission paid to Parks from the sale of the Breckenridge Property as consideration for the referral (the "Referral Agreement"). Robin White thereafter entered into an agreement, the "Exclusive Right to Sell Listing Agreement (Designated Agency)," with Parks for the sale of the Breckenridge Property (the "Breckenridge Listing Agreement"); Jack Miller, a licensed real estate agent affiliated with Parks, was appointed by Parks as "designated agent" for the sellers.[1] In due course, Mr. Miller signed a Confirmation of Agency Status indicating that he was the "designated agent for the seller."[2]

Dr. Hoang Phi Nguyen and his wife, Diana Diep Ho (hereinafter "the Nguyens") contacted the Whites directly about purchasing the Breckenridge Property. The Whites referred the Nguyens to Mr. Miller, who negotiated with the Nguyens on the Whites' behalf, presenting the Whites with the Nguyens' offer to purchase the Breckenridge Property for $900,000. In the course of those negotiations, Mr. Miller, on behalf of Parks, entered into an "Exclusive Right to Sell Listing Agreement (Designated Agency)," ("Waterbrook Listing Agreement" herein) with the Nguyens for the sale of the Nguyens' townhouse at 419 Waterbrook Drive, Mt. Juliet (the "Waterbrook property"); Mr. Miller signed the agreement as "broker or licensee authorized by broker," with Parks listed as the "Broker/Firm." The Whites and Nguyens subsequently entered into a Purchase and Sale Agreement whereby the Nguyens agreed to purchase the Breckenridge property for

---

[1] The Breckenridge Listing Agreement defines "Designated Agent for the Seller" as:

> The individual licensee that has been assigned by his/her Managing Broker and is working as an agent for the Seller or Property Owner in this consumer's prospective transaction, to the exclusion of all other licensees in his/her company. Even if someone else in the licensee's company represents a possible Buyer for this Seller's Property, the Designated Agent for the Seller will continue to work as an advocate for the best interests of the Seller or Property Owner. An agency relationship of this type cannot, by law, be established without a written agency agreement.

[2] Mr. Miller signed this at the request of Robin White to verify that he was only representing the Whites in the transaction.

$900,000, and the Whites agreed to accept the Waterbrook property for $155,000, to be applied as a credit toward the purchase price of the Breckenridge property. The closing took place at Brokers Escrow on July 12, 2013. After the closing but on the same day, Brokers Escrow filed an interpleader action, naming the Whites, Mr. Miller, Parks, and Ms. Palmer as defendants, paying the amount of the commissions into the court, and requesting that the court determine how the commissions would be distributed.[3]

Mr. and Mrs. White filed suit against Mr. Miller, Parks, and Brokers Escrow in Chancery Court on July 12, 2013, alleging that, in addition to acting as their agent, Mr. Miller acted as undisclosed agent for the Nguyens without the White's consent, violated the duties set forth at Tennessee Code Annotated section 62-13-404, breached his fiduciary duty to them, and violated the Tennessee Consumer Protection Act ("TCPA"). Ms. Palmer joined in the suit seeking to recover $6,750, which she alleged was the commission she was due arising from the sale of the Breckenridge property. Parks and Miller filed an answer and counterclaim against the Whites, asserting that the Whites breached the Listing Agreement and the Purchase and Sale Agreement by instructing the closing agent not to pay the commission; they also sought damages under the TCPA against the Whites for bringing a frivolous claim.

Parks and Miller moved for summary judgment contending that the Whites were unable to prove their claims for two reasons: (1) there was no agency relationship between Mr. Miller and the Nguyens, and (2) even if there was an agency relationship between Mr. Miller and the Nguyens, the Whites were not injured and could not prove that they suffered damages as a result of the relationship. The Whites and Ms. Palmer moved for summary judgment on their respective claims. With respect to the dual agency claim, the Whites argued that by acting as an agent for both parties without the Whites' approval, Mr. Miller and Parks unlawfully acted as undisclosed dual agents and should forfeit their commission as a result. The Whites and Ms. Palmer also argued that the TCPA applies to real estate agents and brokers and that "[i]f the court determines that the Defendants engaged in unfair or deceptive practices under the Act, it may award [Plaintiffs] treble damages and attorney fees."

Following a hearing on March 24, 2016, the trial court entered judgment on the motions. The court granted Carole Palmer judgment for $6,750 on her claim, representing 25 percent of 3 percent of the sales price, for referring the Whites to Parks; granted the Defendants judgment on the White's TCPA, negligence, and *respondeat superior* claims and on all claims asserted by Gregory White; and granted Robin White judgment on her claim for dual agency. The court made extensive findings related to the

---

[3] The record in this case does not include the pleadings in the interpleader action. In their brief on appeal, Miller and Parks state that the closing agent received a letter from the Whites prior to the closing, stating that the Whites believed that Mr. Miller breached his duty to them and that they did not wish to pay the broker's commission. Ms. White testified in her deposition that the commissions totaled $51,200.

3

issue of dual agency[4] and concluded that Jack Miller and Parks acted as dual agent for the Whites and the Nguyens, which was an unlawful act, the remedy for which was the forfeiture of the commission.

The court ordered the Clerk and Master to disburse to Robin White $41,875 that had been tendered to the Clerk and Master in the interpleader action, plus accrued interest, less the $6,200 commission for the sale of the Waterbrook property. The court also ordered that the $9,000 earnest money being held by Parks be paid to Ms. White. The court denied Plaintiffs' motion for summary judgment on their claim to receive the $6,200 commission generated from the sale of the Waterbrook property and ordered the clerk and master to distribute those funds to Parks.[5]

Parks, Miller, and the Whites appeal. Parks and Miller contend that the court erred in granting judgment to Ms. White on her claim of undisclosed dual agency and in granting Carole Palmer 25 percent of the 3 percent commission. Mr. and Ms. White contend that the court erred in granting summary judgment to Miller and Parks on the TCPA claim, in denying their request for the $6,200 commission on the Waterbrook property, and in dismissing Gregory White's claims for lack of standing.

## II. STANDARD OF REVIEW

A party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. In *Rye v. Women's Care Ctr. of Memphis, MPLLC*, our Supreme Court set forth the appropriate standard for summary judgment motions:

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production by either (1) affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the moving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set

---

[4] The order incorporated findings of fact and conclusions of law the court made orally at the hearing.

[5] By order entered May 27, 2016, the court modified the April 18 judgment to include the dismissal of the counterclaim against Robin White.

4

forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. . . . [S]ummary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. . . .

477 S.W.3d 235, 264-65 (Tenn. 2015) (brackets in original). This court reviews the trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Rye,* 477 S.W.3d at 250 (citing *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). We view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004).

### III. ANALYSIS

### A. Dual Agency

Our resolution of the majority of the issues on appeal revolves around the question of whether Mr. Miller functioned as dual agent for the Whites and the Nguyens; thus, we first address whether the court erred in granting Ms. White judgment on her claim of undisclosed dual agency. Dual agency "refers to a situation in which the licensee has agreements to provide services as an agent to more than one (1) party in a specific transaction and in which the interests of the parties are adverse." Tenn. Code Ann. § 62-13-102(8).

Tennessee Code Annotated section 62-13-401 sets forth the requirement that a written agreement between a real estate licensee and a seller be entered into in order to establish an agency relationship:

A real estate licensee may provide real estate services to any party in a prospective transaction, with or without an agency relationship to one (1) or more parties to the transaction. Until such time as a licensee enters into a specific written agreement to establish an agency relationship with one (1) or more parties to a transaction, the licensee shall be considered a facilitator and shall not be considered an agent or advocate of any party to the transaction. *An agency or subagency relationship shall not be assumed, implied or created without a written bilateral agreement that establishes the terms and conditions of the agency or subagency relationship.* The negotiation and execution of either an exclusive agency listing agreement

5

or an exclusive right to sell listing agreement with a prospective seller shall establish an agency relationship with the seller.

Tenn. Code Ann. § 62-13-401 (emphasis added). Inasmuch as the statute requires a written bilateral agreement to establish an agency relationship, we first look to the Breckenridge and Waterbrook Listing Agreements to resolve this issue.

The Breckenridge Agreement identifies Parks as "Broker" and Robin White as "Owner/Seller"; Jack Miller signed the agreement as "Broker or Licensee Authorized by Broker". In Section D1 of the agreement, Mr. Miller is named "to be the Designated Agent to the Seller in this transaction."[6] In accordance with the requirements for establishing an agency relationship set forth in Tennessee Code Annotated section 62-13-401, the Breckenridge Agreement expressly designates Mr. Miller as agent and sets forth the terms of the respective agency relationship. Thus, the Breckenridge Agreement conferred an agency relationship between Robin White, Miller, and Parks. *See* Tenn. Code Ann. 62-13-401.

Similarly, the Waterbrook Agreement lists Parks as "Broker," the Nguyens as "Owner/Seller," and Jack Miller signed the agreement as "Broker or Licensee Authorized by Broker." Unlike the Breckenridge Agreement, however, section D1 does not designate Miller as agent, and we have not discovered or been cited to any other language in the agreement in this regard. In the absence of a designation or Mr. Miller as agent in the agreement or any other pertinent provision in the agreement, he cannot be deemed the agent for the Nguyens. *See* Tenn. Code Ann. 62-13-401.

Without elaboration, the Whites argue that Tennessee Code Annotated, section 62-13-406(a) "supports Appellees." We do not agree. That statute states:

A licensee entering into a written agreement to represent any party in the buying, selling, exchanging, renting or leasing of real estate may be appointed as the designated and individual agent of this party by the licensee's managing broker, to the exclusion of all other licensees employed by or affiliated with the managing broker. A managing broker

---

[6] Section D1 states:

Seller hereby authorizes Managing Broker to appoint the Listing Licensee as Designated Agent for the Seller, to the exclusion of any other licensees associated with Broker. A Designated Agent for the Seller can and will continue to advocate Seller's interests in a transaction even if a Designated Agent for the Buyer (other than the licensee below) is also associated with Broker. The Managing Broker hereby appoints Jack Miller/Stutts-Miller properties to be the Designated Agent to the Seller in this transaction.

providing services under this chapter shall not be considered a dual agent if any individual licensee so appointed as designated agent in a transaction, by specific appointment or by written company policy, does not represent interests of any other party to the same transaction.

As applied to the facts of this case, the statute allows that Parks cannot be considered a dual agent because Mr. Miller is the designated agent only for the Whites with respect to their sale of the Breckenridge property; he is not the designated agent for the Nguyens, with respect to the sale of the Waterbrook property. Inasmuch Mr. Miller is not a dual agent, the statute does not support the Whites.

The finding of dual agency is contrary to the record; accordingly we reverse the grant of summary judgment to Ms. White on the claim that Mr. Miller acted as dual agent and grant judgment to defendants.[7] Subject to the disposition of the other issues in this appeal, Defendants may be entitled to a commission from the sale of the Breckenridge property.

## B. Carole Palmer's Fee

Parks and Mr. Miller contend that the court erred in holding that Carole Palmer was entitled to a referral fee equaling 25 percent of 3 percent of the sale price for the Breckenridge property; they argue Mr. Miller orally agreed to reduce the commission from 6 percent to 5 percent, thereby making Ms. Palmer's fee 25 percent of 2.5 percent. The Whites concede in their brief that Ms. Palmer was entitled to the fee awarded by the court.

In the order on the motions for summary judgment, the court held as follows relative to Carole Palmer's fee:

The Exclusive Right to Sell Listing Agreement specifies that the total compensation to be paid to Bob Parks Realty is 6% of the sales price, but this amount was reduced to 5% by oral agreement between Robin White and Bob Parks Realty. The Court finds that the amount of the listing fee is 3% and that Carole Palmer is entitled to a referral fee in the amount of $6,750.00, which is 25% of 3% of the sales price. Carole Palmer is therefore entitled to summary judgment for her claim against Bob Parks Realty.

---

[7] In their brief on appeal, Defendants contend that they are entitled to the commission because Robin White ratified the alleged dual agency by going through with the transaction. In light of our holding that Parks and Miller are entitled to a commission from the sale, this argument is pretermitted.

The relevant portion of the Referral Agreement states:

> In consideration of the referral of Prospect, the Receiving Company agrees to pay the Referring Company at closing a fixed sum of $___ or 25% of the compensation paid to the Receiving Company as a percentage of the Purchase Price, a flat fee, or combination thereof (i.e., real estate commission) including bonuses, if any, which shall only be paid for the Buyer's side and/or Seller's side actually referred (Referral Fee")."

The words "25% listing fee" is handwritten in the margin of the agreement next to the quoted language.[8] The Breckenridge Listing Agreement states that Parks is to receive "6% compensation based on the total sales price which shall be paid by Seller to Broker." The court's finding that Mr. Miller orally reduced the figure from 6% to 5% is supported by testimony in his deposition; neither Ms. Palmer nor the Whites introduced any evidence to dispute that the fee was so reduced.

In the complaint Ms. Palmer sued to recover a fee of $6,750, based on 25% of 3% of the listing fee.[9] This is the calculation adopted by the court and is consistent with the allegations of the complaint and answer. Parks and Mr. Miller's calculation of the referral fee, which they assert is $5,625, is based on the total realtor's commission of 5%, rather than the 3% listing fee alleged in the complaint; there is no evidence to support a determination that the listing fee was reduced from 3% to 2-1/2% when Mr. Miller

---

[8] There is no explanation in the record for this statement.

[9] Pertinent allegations in the complaint included:

> 54. Under the contract between Carole Palmer and Bob Parks Realty, Carole Palmer was to receive 25% of the listing fee (Exhibit A).
> 55. A Realtor's commission in this type transaction is derived from both a listing fee and a selling fee.
> 56. Under the terms of the agreement between the Whites and Defendants, Defendants would receive 3% for the listing fee and 3% for the selling fee in the event that a buyer had an agent.
> 57. If the Buyer did not have its own agent, then the listing commission would be 3% and the selling commission would be 2%.
> * * *
> 60. Therefore, Carole Palmer should receive a judgment against Jack Miller and Bob Parks Realty, jointly and severally, in the amount of 25% of 3% of the sale price of $900,000 or $6,750.

In their answer the Defendants stated that the agreements referenced in paragraphs 54 and 56 "speak for [itself/themselves]", admitted the allegation of paragraph 55, and denied the allegations of paragraphs 57 and 60.

8

agreed to reduce the total commission. Consequently, we affirm the fee of $6,750 awarded to Ms. Palmer.

### Consumer Protection Act Claim

The Whites appeal the dismissal of their TCPA claim, contending that the Act allows for damages and attorney fees if a court finds that real estate agents and brokers "engaged in unfair or deceptive practices under the Act." In dismissing the claim, the court ruled:

> The court finds that for plaintiffs Robin and Gregory White to recover for violation of the Tennessee Consumer Protection Act ("TCPA"), they must specifically allege violation of an enumerated provision of the TCPA. The Court further finds that the complaint filed by Robin and Gregory White fails to allege violation of any enumerated provision. Therefore, the Court finds that the defendants' motion for summary judgment as it relates to the TCPA claim should be granted, and the plaintiffs' motion for summary judgment for recovery under the TCPA should be denied.

Tennessee Code Annotated Section 47-18-109(a) of the TCPA states that, "[a]ny person who suffers an ascertainable loss…as a result of the use…of an unfair or deceptive act or practice described in § 47-18-104(b)…may bring an action individually to recover actual damages." The sole allegation of the complaint purporting to state a violation of the Act states: "Jack Miller violated the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, et seq. by engaging in unfair or deceptive acts." We agree with the trial court that the complaint does not specifically allege a violation of the TCPA or loss under any of the enumerated provisions at section 47-18-104(b). The court correctly granted Parks and Miller judgment on the TCPA claim.

### C. Gregory White's Standing[10]

The court dismissed the claims of Gregory White on the basis that he "was not an owner of the Breckenridge property and had no interest in the transaction." Paragraph two of the complaint alleges that "[t]he property is owned by these two plaintiffs in tenancy by the entirety." This allegation was denied in the answer; accordingly it was the White's burden to introduce evidence of the marital interest in support of their motion for summary judgment.

---

[10] In order to establish standing a plaintiff must show: (1) a distinct and palpable injury that is more than conjectural or hypothetical; (2) a causal connection between the claimed injury and the challenged conduct; and (3) that the alleged injury is capable of redress by a favorable decision of a court. *American Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006).

Upon our review, Robin and Gregory White failed to meet their burden of proof regarding Mr. White's ownership interest. In support of their motion for summary judgment, the Whites filed a Statement of Undisputed Material Facts, the depositions of Mr. Miller (with exhibits attached), Ms. Nguyen, and Ms. White. In none of the materials did they put forth any evidence or make a statement supported by evidence that Gregory White had an ownership interest in the Breckenridge Property. Moreover, in Response to the Defendants' Statement of Undisputed Facts, which states that Gregory White was not a party to the Breckenridge Property Listing Agreement, Plaintiffs stated the following:

> It is undisputed that there are only two signatures on the Listing Agreement: Jack Miller and Robin Clark White. It is undisputed that Gregory White did not sign the listing agreement, which would be evidence that neither Defendant had an agreement with Gregory White and therefore Gregory White has not agreed to any terms of the Listing Agreement, including payment of any commission under any circumstances.

Having conceded that Mr. White was not party to the listing agreement and having failed to put forth any evidence to support their assertion that Mr. White was an owner of the Breckenridge Property, the trial court properly held that Miller and Parks were entitled to summary judgment on all claims asserted by Gregory White.

## D. Waterbrook Commission

With respect to the Whites' claim to the commission paid to Parks and Miller for the sale of the Waterbrook Property, the court held:

> The Court finds that plaintiffs Robin and Gregory White seek to recover the commission the Nguyens agreed to pay to Bob Parks Realty. The Court further finds that plaintiffs Robin and Gregory White are not entitled to recover the commission the Nguyens agreed to pay to Bob Parks Realty, and the commission paid by the Nguyens in the amount of 6,200.00 should be remitted to Bob Parks Realty. Therefore, the Court finds that the plaintiffs' motion for summary judgment, as it relates to the Nguyen commission, should be denied.

Mr. and Mrs. White contend that they should have been awarded the commission because they "would have gotten a better deal without the bad acts of the Defendants." They argue that their initial offer to the Nguyens for the Waterbrook property was $150,000 and the increase to $155,000 was due to the Nguyens having to pay Mr. Miller's commission; therefore "if there had been no undisclosed dual agency, there would have been no commission on the Waterbrook property whatsoever." While we respect the ingenuity of their argument, we conclude that the court did not err in awarding

10

the commission to Parks and Miller, who had an agreement with the Nguyens to receive a commission for the sale of their property. Any controversy with respect to the Waterbrook commission is to be settled between the Nguyens and Parks.

**E. Breach of Fiduciary Duty & Tenn. Code Ann § 62-13-404**

Plaintiffs alleged in the complaint that the Defendants breached their fiduciary duty and violated Tennessee Code Annotated section 62-13-404.[11] While both Defendants and Plaintiffs moved for summary judgment on all claims, the final order does not contain findings of fact with respect to either of these claims. Upon review of the order, the following language is pertinent to these claims:

> The Court finds that the undisputed facts show that Plaintiffs Robin and Gregory White are unable to show an injury or loss resulting from any action of the defendants about which they complain and plaintiffs Robin and Gregory White are unable to prove damages. Therefore, the Court finds that plaintiffs Robin and Gregory White cannot prove the elements of a claim of negligence, and the defendants are entitled to summary judgment for the negligence claims set forth in the complaint. Furthermore, the plaintiffs' motion for summary judgment for the negligence claims should be denied.

---

[11] Tennessee Code Annotated section 62-13-404 states:

> Any licensee who acts as an agent in a transaction regulated by this chapter owes to the licensee's client in that transaction the following duties, to:
> (1) Obey all lawful instructions of the client when the instructions are within the scope of the agency agreement between licensee and licensee's client;
> (2) Be loyal to the interests of the client. A licensee must place the interests of the client before all others in negotiation of a transaction and in other activities, except where the loyalty duty would violate licensee's duties to a customer under § 62-13-402 or a licensee's duties to another client in a dual agency; and
> (3)(A) Unless the following duties are specifically and individually waived, in writing by a client, a licensee shall assist the client by:
> (i) Scheduling all property showings on behalf of the client;
> (ii) Receiving all offers and counter offers and forwarding them promptly to the client;
> (iii) Answering any questions that the client may have in negotiation of a successful purchase agreement within the scope of the licensee's expertise; and
> (iv) Advising the client as to whatever forms, procedures and steps are needed after execution of the purchase agreement for a successful closing of the transaction.
> (B) Upon waiver of any of the duties in subdivision (3)(A), a consumer shall be advised in writing by the consumer's agent that the consumer may not expect or seek assistance from any other licensees in the transaction for the performance of the duties in subdivision (3)(A).

T.C.A. § 62-13-404 (West)

\*\*\*

> It is further ordered that defendants Jack Miller and Bob Parks Realty are entitled to summary judgment for the negligence claims set forth by plaintiffs Robin and Gregory White. Therefore, it is ordered that the defendants' motion for summary judgment is granted, and the negligence claims are hereby dismissed. It is further ordered that the motion for summary judgment of the plaintiffs as to the negligence claims is denied.

The trial court did not make any findings specifically with respect to the claims for breach of fiduciary duty or violation of section 62-13-404. Accordingly, we remand for the court to make appropriate findings and enter a ruling on the respective claims.

## IV. CONCLUSION

We reverse the grant of summary judgment to Robin and Gregory White with respect to the claim of undisclosed agency and grant summary judgment to Jack Miller and Bob Parks; affirm the grant of summary judgment to Carole Palmer; affirm the grant of summary judgment to Parks and Miller for the $6,200 commission on the Waterbrook Property; we affirm the grant of summary judgment to Parks and Miller on all claims set forth by Gregory White; we remand for the court to make findings and enter a ruling on the claim for breach of fiduciary duty and violation of Tennessee Code Annotated section 62-13-404.

RICHARD H. DINKINS, JUDGE

12